J-S30012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MASTAFA MCCLOUD | |
| Appellant | No. 1849 EDA 2015 |

Appeal from the PCRA Order January 23, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0203311-2005;
CP-51-CR-0203851-2005; CP-51-CR-0204541-2005

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED SEPTEMBER 13, 2016**

Appellant, Mastafa McCloud, appeals *nunc pro tunc* from the order denying as untimely his second petition filed pursuant to the Post Conviction Relief Act ("PCRA") at 42 Pa.C.S.A. §§ 9541-9546.[1]  We affirm.

The relevant facts and procedural history of this case are aptly stated in the PCRA court's opinion.  Therefore, we will only briefly summarize them here.  Appellant was one of several men who engaged in a shooting rampage on the streets of Philadelphia on the evening of October 14, 2004.  Following a bench trial, Appellant was convicted on November 18, 2005, of numerous counts of aggravated assault, and one count each of attempted

---

[1] Appellant purports to appeal from the judgment of sentence imposed on May 16, 2006.  As we will discuss, that assertion is incorrect.

murder, carrying a firearm without a license, and criminal conspiracy. On May 16, 2006, the court imposed an aggregate sentence of thirteen and one half (13½) to twenty-seven (27) years' incarceration. The court denied Appellant's timely post-sentence motions. This Court affirmed the judgment of sentence on November 14, 2008. *See Commonwealth v. McCloud*, 964 A.2d 945 (Pa.Super. 2008) (addressing sufficiency of evidence issue and waiving discretionary aspects of sentencing issue). Appellant did not seek further review at that time. Thus, for purposes of the PCRA, Appellant's judgment of sentence became final on December 14, 2008, upon expiration of the 30-day time period to petition for allowance of appeal with our Supreme Court. *See* Pa.R.A.P. 1113 (stating: "Except as otherwise prescribed by this rule, a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days after the entry of the order of the Superior Court or the Commonwealth Court sought to be reviewed"). On October 5, 2009, Appellant filed a *pro se*, untimely petition with our Supreme Court for leave to file a petition for allowance of appeal *nunc pro tunc*, which the Court denied on December 30, 2009.

Appellant filed his first PCRA petition *pro se* on April 23, 2010, alleging numerous claims of ineffective assistance of counsel. Appellant also asserted his petition was timely, although he erroneously measured the one-year statutory time limit from December 30, 2009, the date our Supreme Court denied his untimely petition for allowance of appeal *nunc pro tunc*.

*See Commonwealth v. Hutchins*, 760 A.2d 50 (Pa.Super. 2000) (holding untimely petition for allowance of appeal filed with Pennsylvania Supreme Court, which later denied petition, does not operate to circumvent time restrictions of PCRA by altering date on which petitioner's sentence became final). The court appointed counsel who filed a motion to withdraw and a "no-merit" letter pursuant to *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*), noting the PCRA petition was untimely and no statutory exception applied. Following notice per Pa.R.Crim.P. 907 on June 23, 2011, the court dismissed the petition without a hearing on July 22, 2011.

Appellant filed his second PCRA petition soon after, on August 8, 2011, and an amended petition on December 5, 2011. The court issued Rule 907 notice on October 4, 2012, but later granted Appellant's request for appointment of counsel on January 17, 2013. Counsel filed a *Turner/Finley* no-merit letter and petition to withdraw on August 1, 2013. On December 12, 2013, the court issued Rule 907 notice, to which Appellant responded on December 27, 2013, raising additional claims including one claim of after-discovered facts in the form of a newspaper article from November 8, 2013, involving an investigation of one particular police officer. On January 23, 2014, the court dismissed the petition without a hearing and permitted counsel to withdraw.

On May 27, 2014, Appellant filed a third PCRA petition, requesting

reinstatement of his appellate rights *nunc pro tunc* from the dismissal of his second PCRA petition, because he did not receive notice of the court's dismissal of the second PCRA petition. By order docketed on June 1, 2015, the court appointed counsel, at Appellant's request, and with the Commonwealth's agreement, the court reinstated Appellant's right to file an appeal from the order dismissing his second PCRA petition. Appellant filed a notice of appeal on June 19, 2015.[2] The court ordered Appellant on June 24, 2015, to file a concise statement of errors complained of on appeal. Appellant complied on July 1, 2015.

As a preliminary matter, we must determine whether Appellant timely filed his current PCRA petition. ***Commonwealth v. Harris***, 972 A.2d 1196

---

[2] Appellant purports to appeal from the judgment of sentence imposed on May 16, 2006. That assertion is plainly incorrect. Nevertheless, the certified record does contain some misleading documents. For example, in the record there is an order dated June 18, 2015, that says it is reinstating Appellant's right to file a direct appeal from his judgment of sentence. This order does not appear as a certified docket entry, although counsel included the order along with the court's June 1, 2015 order, when counsel filed the notice of appeal. The June 18, 2015 order, however, cannot be correct, where the PCRA court lacked jurisdiction to grant that kind of relief because Appellant already had the benefit of a direct appeal from the judgment of sentence. ***See Commonwealth v. Grosella***, 902 A.2d 1290, 1293-94 (Pa.Super. 2006) (stating, "the reinstatement of direct appeal rights is not the proper remedy when appellate counsel perfected a direct appeal but simply failed to raise certain claims"; "In such circumstances, the [petitioner] must proceed under the auspices of the PCRA, and the PCRA court should apply the traditional three-prong test for determining whether appellate counsel was ineffective"). Counsel also labeled Appellant's brief as if the appeal is from the judgment of sentence imposed on May 16, 2006. Notwithstanding these errors, the PCRA court properly treated the appeal presently before us as an appeal from the order dismissing Appellant's second PCRA petition.

(Pa.Super. 2009), *appeal denied*, 603 Pa. 684, 982 A.2d 1227 (2009). Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. **Commonwealth v. Robinson**, 575 Pa. 500, 837 A.2d 1157 (2003). The most recent amendments to the PCRA, effective January 16, 1996, provide that a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1); **Commonwealth v. Bretz**, 830 A.2d 1273 (Pa.Super. 2003). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petition must allege and the petitioner must prove:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to

apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Additionally, a petitioner asserting a timeliness exception must file a petition within sixty (60) days of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2). "As such, when a PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the trial court has no power to address the substantive merits of a petitioner's PCRA claims." ***Commonwealth v. Gamboa-Taylor***, 562 Pa. 70, 77, 753 A.2d 780, 783 (2000).

Instantly, Appellant's judgment of sentence became final on December 14, 2008, upon expiration of the 30-day time period to petition our Supreme Court for allowance of appeal. This date was confirmed when the Supreme Court denied Appellant's petition for allowance of appeal *nunc pro tunc*. Appellant filed the current petition on August 8, 2011, almost three years after his judgment of sentence became final. Therefore, Appellant's PCRA petition was patently untimely.

With respect to Appellant's attempt to invoke the after-discovered facts exception, the PCRA court rejected Appellant's reliance on news media reports of allegations of unrelated police misconduct, citing ***Commonwealth v. Castro***, 625 Pa. 582, 596-99, 93 A.3d 818, 826-28 (2014) (holding newspaper article containing allegations of police misconduct alone is not

- 6 -

"evidence" for purposes of deciding whether new trial is warranted; motion for hearing for new trial must describe what will be presented at hearing; hearing cannot be used as means to secure investigation; "Simply relying on conclusory accusations made by another, without more, is insufficient to warrant a hearing"). The PCRA court said:

> [Petitioner] made no attempt to demonstrate that there was even a trace of evidence of any misconduct on the part of Officer Dove or any of the other police officers involved in his arrest and conviction, even going so far as to having acknowledged himself that he was unaware of any. From the discussions of the proven facts by this [c]ourt and [petitioner's] appellate and two previous PCRA attorneys, it does not appear that officer Dove even had any involvement in his arrest or conviction. [Appellant's] is just one more of many attempts by convicted felons to belatedly challenge the weight and sufficiency of the evidence that convicted them by disparaging all of the conduct of all police officers involved based solely upon the fact that one of them may have been involved in later and totally unrelated questionable conduct. …[A]ny information contained in news media reports which [a petitioner] does not corroborate with actual evidence or purported witness testimony proving the allegations in them is simply hearsay upon hearsay and does not, and never did, provide any basis for relief whatsoever, nor for obtaining discovery and being given a hearing in connection therewith, even if the news sources were identified and documented. The law has also long been clear, …, that a PCRA petitioner cannot be allowed to go on a fishing expedition into police files simply because one of the officers involved in his case may have committed improprieties in unrelated matters, without meeting the PCRA requirements in demonstrating that there is a strong possibility that any improprieties were actually committed in [petitioner's] case. He cannot simply rely on innuendo.

(PCRA Court Opinion, filed July 21, 2015, at 12-13). We agree with the court. Because Appellant failed to plead and prove any cognizable exception

to the PCRA timeliness requirements, his second petition remained time-barred. *See* 42 Pa.C.S.A. § 9545(b)(1). Accordingly, the PCRA court properly dismissed the petition as untimely.[3]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2016

---

[3] Due to our disposition, we deny Appellant's open motion for remand and his open motion to strike the Commonwealth's brief.

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA   :   .CP-51-CR-0204541-2005
   :   CP-51-CR-0203311-2005
vs.   :   CP-51-CR-0203851-2005
   :
MASTAFA McCLOUD   :   SUPERIOR COURT
   :   NO. 1849 EDA 2015

OPINION

MAZZOLA, WILLIAM, J.               JULY   21st  , 2015

## I. INTRODUCTION AND FACTUAL HISTORY

This is a *nunc pro tunc* appeal by permission from the dismissal of the defendant's

second petition for relief under the Post Conviction Relief Act, *42 Pa.C.S. § 9541 et seq.,*

hereinafter the *PCRA*. He and four other individuals[1] were charged with numerous offenses

arising from a mass armed assault upon an intended victim on a city street in which seven other

individuals, including four policemen, were caught in the line of fire. At the conclusion of a

consolidated nonjury trial on November 18, 2005, he was found guilty of eight counts of

Aggravated Assault and one count each of Attempted Murder, Carrying a Firearm Without a

License and Criminal Conspiracy.[2] In order to explain the court's reasons for dismissing the

petition it's necessary to recount the factual and procedural histories in some detail. The

codefendants were convicted of similar charges and all of the judgments were affirmed on

appeal. The factual history was generally set forth in one of them.

> . . . On the evening of October 14, 2004, Detective Ronald Dove, Detective
> James Waring, Officer Thomas Hood, and Officer Edward Allen were investigating
> a shooting incident that occurred earlier in the day in the neighborhood of 33rd and

---

[1] Kyle Little: CP-51-CR-0203313 & 0204543-2005; Leroy Fair: CP-51-CR-0305881-2005; Edmund Jackson: CP-51-CR-0603441 & 0305882-2005; Ronald Alston: CP-51-CR-0203312, 0204542 & 0204551-2005. In the lower court docket and in this Court's dockets in both his direct and present appeal the defendant's name is spelled Mastafa. In the Jackson appeal discussed *infra* it's spelled Mufusta and he and his counsel spell it Mustafa.
[2] *18 Pa.C.S. §§ 2702(a), 2502, 901(a), 6106 & 903.*

1

Cumberland Streets in Philadelphia. Charles Wesley was the target of that shooting. Detectives Dove and Waring were standing on 33rd Street, speaking to Gene Palmer about the incident. Officers Hood and Allen were sitting in a Ford Taurus parked nearby on the street. Wesley was walking south on 33rd Street, with Sharee Norton and her two children, Sharron Norton and Shanya Wesley.

A group of men, which included Appellant, Kyle Little, Mufusta McCloud, Ronald Alston, and Leroy Fair was walking toward them. The men were armed. As they neared Wesley, they started shooting. The officers exited their vehicle. Officer Allen pushed Palmer to the ground. Officer Hood radioed for assistance from other officers in the area. Detective Waring, Norton, and her children took cover. Detective Dove saw that the gunmen were firing in his direction, and took particular note of Appellant, who was in a white T-shirt. Detective Dove crouched to the ground. In total, between 50 and 80 shots were fired by the gunmen. Detective Dove fired four shots toward the gunmen. No one was injured. Wesley ran north on 33rd Street. The gunmen ran west on Cumberland toward 34th Street. The detectives and the officers pursued the gunmen. When Detective Dove rounded the corner of 33rd and Cumberland, he saw Appellant. Appellant turned, looked over his right shoulder at Detective Dove, and raised his gun toward the detective. In response, Detective Dove fired one shot at Appellant. Ultimately, Appellant and the other gunmen were apprehended.

*Commonwealth v. Jackson*, 2008 PA Super 192, 955 A.2d 441, 442-43 (2008), appeal denied,

600 Pa. 760, 967 A.2d 958 (2009).[3] Some additional facts proven at trial as to this defendant's

involvement were summarized in this Court's memorandum opinion in his direct appeal. After

first noting that appellate counsel's *Anders* brief met the requirements of filing one as set forth in

*Commonwealth v. Millisock*, 2005 PA Super 147, 873 A.2d 748 (2005), the Court ruled:

The *Anders* brief first addresses the sufficiency of the evidence in support of Appellant's conviction. The record reflects that an eyewitness, Sharee Norton, saw appellant firing a gun. Norton, her boyfriend Charles Wesley, and her children were in the line of fire. Several officers, who were on the scene when the shooting started, apprehended Appellant a short distance from the site. A shell casing matching one of the guns used in the shooting fell from Appellant's body when the officers apprehended him. The trial judge, as fact finder, chose to credit the Commonwealth's evidence. We agree with counsel that a challenge to the sufficiency of the evidence would be frivolous.

The *Anders* brief next addresses sentencing. The trial court's sentence is well within the statutory limit, and Appellant did not comply with the procedural

---

[3] Only the opinion in Jackson's appeal was published. This defendant's was at 2464, and the others' at 659 (Little), 1570 (Fair), 2758 (Jackson) & 2877 (Alston) EDA 2006. The defendant was represented by the same attorney at trial and on appeal.

2

requirements for preserving a challenge to the discretionary aspects of the sentence. We agree with counsel that any challenge to the sentence would have been frivolous.

Finally, our independent review of the record does not reveal the existence of any potentially meritorious issue. In light of the foregoing, we will grant counsel's petition to withdraw and affirm appellant's judgment of sentence.

*2464 EDA 2006, pp. 3-4.* In a *Finley* letter brief filed in the defendant's first *PCRA* proceeding, his appointed counsel pointed out additional evidence as to his involvement.

[Officer Hood testified that he and another officer were in the police vehicle] parked on the east side of 33rd Street, near the 2500 block, . . . when they saw a man, (later known to be Charles Wesley), walking south on 33rd St. A few seconds later they heard gunshots. He saw gunshots coming from 33rd and Cumberland. Officer Dove, who was one of the four officers from the vehicle returned fire and ran west on Cumberland. Officer Hood ran west on Cumberland and as he turned the corner at 34th Street he encountered Rita Wesley who shouted, "They shot my baby and they are running that way . . . ."[»] He saw a group of males running north on 34th Street. When they hit the corner they saw marked vehicles and made a u-turn to run south on 34th Street. . . . three of the males sat down on the steps of houses [and] Mustafa McCloud was one of [them and he] was arrested.

[Rita Wesley testified that] eight or nine black men came walking down the street. She had been sitting on the steps outside her house, . . . heard shots, . . . ran in her house . . . and shut the door. [She] realized her twenty year old son, Charles, was out on the street somewhere so she opened her front door and saw four black males running up the street. Ms. Wesley ran out and saw police officers coming up the street with their guns drawn. She threw up her hands and told the officers that the men ran up the street. When she got to the top of 34th Street she saw the officers had four men on the ground. One of the men was Mustafa McCloud.

*Letter of Peter A. Levin, Esq., May 16, 2011, pp. 1-2* (citations to Notes of Testimony omitted).

## II.   PROCEDURAL HISTORY

On May 16, 2006, the defendant was sentenced to terms of incarceration aggregating to 13½ to 27 years. He filed a post sentence motion on May 18th, it was denied on August 18th, and his direct appeal was filed on the 30th. In its *Pa.R.A.P. 1925(a)* opinion of April 4, 2007, the trial court noted that any issues that the defendant wished to raise on appeal should have been deemed waived for having failed to comply with the court's order to file a *R. 1925(b) Statement,* and that having carefully reviewed the record it revealed that there were no issues of plausible merit and

that the evidence to support the convictions was overwhelming. However, on June 12, 2008, this Court issued a memorandum decision and order noting that the record indicated that a *Statement* had been timely filed and did not indicate why the trial judge did not receive it. It went on to note that appellate counsel had also filed a petition to withdraw and a notice of intention to file an *Anders* brief which, under the subsequently amended rule, would serve as a substitute for the *Statement* and remanded the case for counsel to file and serve the brief. The Court affirmed the judgment of sentence on November 14, 2008. On October 5, 2009, the defendant filed a *pro se* Petition for Leave to File a Petition for Allowance of Appeal Nunc Pro Tunc with our Supreme Court[4] which denied it on December 30th.

He filed his first *PCRA* petition *pro se* on April 23, 2010, alleging ineffective assistance of trial counsel in failing to (1) address a *Kloiber* issue in closing argument with regard to two of the Commonwealth's witnesses' identification of him as one of the shooters, (2) interview and call an alibi witness, and (3) file the *1925(b) Statement*, and (4) court error in finding him guilty on what he characterized as questionable Commonwealth evidence.[5] He elaborated on the bases for those claims in an accompanying memorandum in which he added two additional claims: (5) misconduct on the part of the prosecutor in closing argument in stating "that she vouches that the Commonwealth's witness Sharee Norton was telling the truth." and (6) "layered ineffectiveness" of counsel in failing to raise a claim of insufficient evidence. He claimed that the petition was timely because he filed it within one year of the Supreme Court's denial of his request to file a late *allocator* petition. Counsel was appointed and filed the *Finley* letter cited above in which counsel also noted that the petition was not timely filed and the defendant failed to allege any

---

[4] 148 EM 2009. The defendant did not seek *certiorari*.

[5] With regard to the second issue, he attached a statement by the witness claiming that at around 7:30 pm on the day of the incident she met the defendant in the 2600 block of 34th Street, spoke with him for several minutes, heard gunshots and they started running toward her house but she told the defendant that she had left her keys in her car and he went back to get them; when he didn't return in five minutes, she went back to find him being arrested.

4

exceptions to the *PCRA* timely filing requirements. The court filed and served a Notice of Intent to Dismiss for lack of merit pursuant to *Pa.R.Crim.P. 907* on June 23, 2011, dismissed it without a hearing on July 22nd, and the defendant did not file an appeal.

He filed the second *PCRA* petition *pro se* on August 8th in which his only claim was counsel ineffectiveness in failing to file the *1925(b) Statement*, and an amended petition on December 5th in which he merely elaborated on that same issue. The only support he provided in both petitions was the trial court's *1925(a)* opinion described above. The court filed and served a *R. 907* Notice of Intent to Dismiss for lack of timeliness on October 4, 2012, but on January 17, 2013, granted the defendant's motion to appoint counsel. New counsel was appointed and filed a *Finley* letter and an Application to Withdraw as Counsel on August 10, 2013, noting that upon a thorough review of the record the issue raised was without merit, the record did not indicate that there were any other issues of arguable merit, and that the petition was not timely filed and the defendant again failed to allege and the record failed to reveal that any of the exceptions to the timely filing requirements applied. On December 12th the court filed and served a *R. 907* Notice of Intent to Dismiss advising the defendant of the *Finley* letter, his counsel's withdrawal, and of his right to proceed *pro se* or retain private counsel.

On the 27th, in response to the notice of intent to dismiss, the defendant filed *pro se* a "Subsequent Petition for Post Conviction Collateral Relief", a "Motion for New Trial Based Upon After Discovered Evidence; Alternatively, for Post Conviction Collateral Relief; or Alternatively, for a Writ of Habeas Corpus", and "Objections to Notice of Intent to Dismiss Pursuant to [R. 907]". In the first, he claimed that his trial/appellate counsel abandoned him by failing to advise him that he could, and the time restrictions within which to, file an *allocatur* petition after his judgment was affirmed on direct appeal, that he should be appointed new *PCRA* counsel in view of the fact that his then counsel rendered ineffective assistance in presenting "his

5

wholly erroneous and perfunctory assessment" of the claims presented in his *pro se* petition and subsequent submissions in the *Finley* letter, and that he should be given an evidentiary hearing in order to establish the merits of all those claims. In the second he claimed after discovered exculpatory evidence that the police officers who participated in his arrest and conviction must have presented "manipulated" facts because one of them, Officer Dove, in September of 2013, became under investigation for having allegedly assisted his girl friend in covering up her involvement in the stabbing death of a man with whom she lived, and possibly covering up two other slayings and the disappearance of another man, which he supported by attaching a copy of a November 8, 2013, philly.com web site news article to that effect; he claimed that this new evidence would corroborate his previous claims with regard to the questionable evidence of his guilt and demanded to be provided with all material concerning those investigations and any other "Brady material" in the possession of the District Attorney's Office.[6] In the third he claimed that his *PCRA* counsel was also derelict in not bringing up those issues and the fact that there was another witness who had come forward who could have exonerated him and corroborated his previously identified alibi witness's statement[7] and improperly submitting the *Finley* letter instead in which counsel failed to properly address and evaluate all of the claims he raised in both his second and his first *PCRA* petitions. The court dismissed the petition without a hearing on January 23, 2014, and no appeal was filed.

On May 27, 2014, he filed a third *PCRA* petition in which he claimed that he was not served with notice that his previous petition had been formally dismissed and was thus deprived of his right to appeal and requested that the right be reinstated. On February 12, 2015, he filed a

---

[6] With regard to the latter, he stated: "While there has not been any Brady evidence forthcoming, nor Brady material presented to petitioner thus far, it is not clear that there is any additional after-discovered evidence within the meaning of PCRA [42 Pa.C.S.A. §9545(b)(1)(ii)] or Rule 720, petitioner is filing this instant motion in an abundance of caution within sixty (60) days of the first disclosure of Detective Dove's apparent misconduct."
[7] He claimed to have submitted an affidavit from this other witness, whom he named but did not otherwise identify, with his second petition but there is none in the record and there was no mention of that witness in the petition. He did not describe exactly to what facts this witness would have testified other than the alleged corroboration.

6

"Supplement to Motion for New Trial/PCRA Petition" reiterating his previous claim of police misconduct and submitting in support a Philadelphia Daily News newspaper article detailing the continuing investigations into Officer Dove's alleged misconduct in which it was also noted that he was discharged from the police force for failing to cooperate with the detectives conducting those investigations. On March 18th, the assistant district attorney assigned to respond to the petition wrote to the *PCRA* court noting that the record did not indicate, and asking it to supply any indication it may have had, that the court had advised the defendant by certified mail, return receipt requested, that his previous petition had been formally dismissed and of his "right to appeal from the final order disposing of the petition and of the time limits within which the appeal must be filed" pursuant to *R. 907* and that, if he was not, the prosecution would consider agreeing to having the court reinstate his right to appeal *nunc pro tunc*. Having reviewed the record the court did not see any indication that he was so notified and at a hearing on June 1st, with the agreement of the Commonwealth, the court reinstated his appeal right. New counsel was appointed and this appeal was filed on the 19th.

In compliance with the court's order to file a Concise Statement of Matters Complained of on Appeal Pursuant to *Pa.R.A.P. 1925(b)*, present counsel states the issues as follows: "1. The evidence was insufficient to convict the defendant [of all of the charges] because [it failed] to identify [him] as the perpetrator [and] to find [him] guilty of attempted murder because [it failed] to establish [his] *mens rea* for this offense [and] 3. The trial court erred [in] consolidating the three cases for one trial [and] 4. . . . in denying the post sentence motions. . . .".[8] In so stating the issues, counsel completely ignored the fact that none of them were raised in the second *PCRA* petition, and completely disregarded the only issue that was raised.

---

[8] Counsel included two additional paragraphs asserting a right to "modify, amend, and/or supplement this statement" pending receipt of copies of the notes of testimony but for the reasons set forth below the court sees no reason to consider allowing him to do so.

7

## III. DISCUSSION

From the above discussion of the history of the case, it is obvious that the one claim that the defendant did raise in the second *PCRA* petition was rendered moot not only because he included it in his first *PCRA* petition, which was dismissed as untimely and from which he did not appeal, but also because his counsel did file a *1925(b) Statement*, but also filed an *Anders* brief which this Court accepted as a substitute for a *Statement* and ruled on the merits that the evidence was sufficient for all of his convictions. The present *Statement* is simply an attempt to raise issues as if this were a timely direct appeal from a judgment of sentence and to litigate issues that either have been previously raised and rejected, or should have been raised in his actual direct appeal, or could have been raised in his first *PCRA* petition as claims of ineffective assistance of trial/appellate counsel. Any attempt to have done so would, of course, have been rendered futile because his first *PCRA* petition was not filed timely and neither defendant nor his present counsel have made any attempt to dispel the unavoidable conclusion that the defendant was or should have been fully aware of all of those potential issues and have raised them in the direct appeal or in a timely *PCRA* petition as claims of ineffective assistance of counsel. In addition, the first two issues in the *Statement* are attempts to relitigate the sufficiency of the evidence issue by presenting new theories of relief. It must also be noted that all of the issues that the defendant raised in all of his submissions in response to the court's notice of intent to dismiss the second petition, which he treated as being parts of that petition, were also attempts to interject into that second *PCRA* proceeding issues that were either waived, patently frivolous, completely unsupported, or attempts to relitigate issues that he raised or was legally required to have raised in his direct appeal or first *PCRA* petition.

> On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. *Commonwealth v. Washington, 592 Pa. 698, 927 A.2d 586,*

8

*593-94 (Pa. 2007); Commonwealth v. Breakiron, 566 Pa. 323, 781 A.2d 94 (Pa. 2001); Commonwealth v. Strong, 563 Pa. 455, 761 A.2d 1167, 1170 n. 3 (Pa. 2000).* In order to be eligible for PCRA relief, Appellant must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found at *42 Pa.C.S. § 9543(a)(2).*

Further, Appellant must demonstrate that the issues raised in his PCRA petition have not been previously litigated or waived, and that "the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational strategic or tactical decision by counsel." *Washington, 927 A.2d at 593* (citing *42 Pa.C.S. §§ 9543(a)(3), (4)*). An issue has been previously litigated if "the highest appellate court in which the petitioner was entitled to review as a matter of right has ruled on the merits of the issue." *Id.* (citing *42 Pa.C.S. § 9544(a)(2)*); *Commonwealth v. Crawley, 541 Pa. 408, 663 A.2d 676, 678 (Pa. 1995).* A PCRA claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." *42 Pa.C.S. § 9544(b).* Further, we no longer apply the relaxed waiver doctrine in capital PCRA appeals. *Commonwealth v. Albrecht, 554 Pa. 31, 720 A.2d 693, 700 (Pa. 1998).*

*Commonwealth v. Steele, 599 Pa. 341, 961 A.2d 786, 796 (2008).* Even if the defendant had raised all of the issues described in the present *1925(b) Statement* in either his first or second *PCRA* petition as ineffective assistance of counsel claims, they would have been considered, not only as untimely, but as an improper attempt to relitigate the sufficiency of the evidence claim that was reviewed and rejected in his direct appeal.

A second or subsequent petition for post-conviction relief will not be entertained unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred. *Commonwealth v. Allen, 557 Pa. 135, 141, 732 A.2d 582, 586 (1999).* A *prima facie* showing of entitlement to relief is made only by demonstrating either that the proceedings which resulted in conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or the defendant's innocence of the crimes for which he was charged. *Allen, at 142, 732 A.2d at 586.* Our standard of review for an order denying post-conviction relief is limited to whether the trial court's determination is supported by evidence of record and whether it is free of legal error. *Commonwealth v. Jermyn, 551 Pa. 96, 709 A.2d 849, 856 (1998).*

*Commonwealth v. Ali, 624 Pa. 309, 86 A.3d 173, 176-77 (2014), cert. den'd, Ali v. Pennsylvania, 135 S. Ct. 707, 190 L. Ed. 2d 439 (2014).* "*See Commonwealth v. Bracey, 568 Pa. 264, 795 A.2d 935, 939 n. 2 (2001)* (appellant cannot obtain post conviction review of claims previously

9

litigated on appeal by alleging ineffectiveness of prior counsel and presenting new theories of relief to support previously litigated claims)." *Commonwealth v. Stokes, 576 Pa. 299, 304, 839 A.2d 226, 229 (2003).* The same principle applies to the defendant's *pro se* attempt to interject additional, and relitigate previous, claims in his submissions in response to the court's notice of intent to dismiss the present petition.

> The Post Conviction Hearing Act, 42 Pa.C.S.A. § 9541 et seq., expresses a clear preference that it be used as a vehicle to secure review of convictions only once. Specifically, § 9545(c) provides:
>
>> Any person desiring to obtain relief under this subchapter shall set forth in the petition all of his then available grounds for such relief for any particular sentence he is currently serving and he shall be entitled to only one petition for each crime. The failure to raise any issue in the petition shall be deemed a waiver of any right to future presentation of another petition containing grounds for relief that were available and could have been presented.
>
> The stated purpose of the Act is to provide relief from convictions and sentences imposed without due process of law, 42 Pa.C.S.A. § 9542, not review of prior post conviction proceedings. Thus, persons currently serving sentences in this Commonwealth may, consistent with the Act, file one and only one PCHA petition. Failure to raise all claims that might have been raised in the first PCHA petition constitutes a waiver which will only be avoided by "extraordinary circumstances," 42 Pa.C.S.A. § 9544(b). Extraordinary circumstances have been variously defined by members of this Court, see, e.g., this author's dissenting opinion in *Commonwealth v. Watlington, 491 Pa. 241, 246, 420 A.2d 431, 434 (1980)*; see also the opinion of Mr. Justice Larsen in *Commonwealth v. Alexander, 495 Pa. 26, 432 A.2d 182 (1981).* However, this case does not present any "extraordinary circumstances" sufficiently compelling to persuade us that the conduct of an evidentiary hearing on appellee's third PCHA petition is warranted.

*Commonwealth v. Hagood, 516 Pa. 340, 344-45, 532 A.2d 424, 425-26 (1987).* Even if those additional claims could be considered as properly raised claims of prior counsel ineffectiveness they can be readily dismissed as frivolous.

With regard to the alleged failure of appellate counsel to discuss *allocatur* proceedings, in the *Finley* letter submitted in the defendant's first *PCRA* proceeding, in addressing the claim that his petition should be deemed timely because he filed it within one year of the Supreme Court's

10

denial of his petition for leave to file an *allocator* petition *nunc pro tunc*, his counsel discussed and attached copies of that petition and other documents which showed the following. In the petition, the defendant alleged that he should have been considered to have filed a timely *allocator* petition by mailing it to the Court and a copy of it to the District Attorney's Office by certified mail on December 12, 2008. In support, he attached a copy of the return receipt he received from the latter and a copy of a letter he wrote to the Court on September 9, 2009, in which he noted that he had received a response to a previous inquiry about the petition in which the Court advised him that it had no record of having received it. He argued that it should be deemed to have been filed since he proved it was timely served on the Commonwealth. He never submitted any evidence that the petition was, in fact, mailed to the Court. In response to that letter the Court clerk advised him that his only recourse was to request permission to file an *allocator* petition out of time. Thus it is obvious that he was fully aware of his ability and the time requirements within which to request permission to appeal but failed to follow the proper procedure in doing so. His appellate counsel having been permitted to withdraw at the same time that his judgment was affirmed, he had no obligation to assist him in that regard.

The defendant's claim that his counsel was derelict in submitting an "improper" *Finley* letter is patently frivolous. His only basis for that claim is that his counsel did not thoroughly discuss and argue all of his previous claims and those he raised in his latest submissions.

> Rather, " 'an independent review of the record by competent counsel....' " was all the petitioner was entitled to receive under state law, at least according to the Majority of the United States Supreme Court. See *Turner, supra, 518 Pa. at ----, 544 A.2d at 928*, quoting *Pennsylvania v. Finley, supra, 481 U.S. at ----, 107 S.Ct. at 1995, 95 L.Ed.2d at 548*. This view has been adopted by our highest Court in its holding that the actions of counsel and the PCHA court in *Commonwealth v. Finley, 330 Pa.Super. 313, 479 A.2d 568 (1984)* (Rowley, J. dissenting), rev'd *sub nom Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), in other words the case which is before us now for review,* were proper in ensuring the petitioner's right to effective representation. More particularly, the "independent review" necessary to assure a withdrawal request by PCHA counsel

11

required proof of:

1) A "no-merit" letter by PCHA counsel detailing the nature and extent of his review;

2) The "no merit" letter by PCHA counsel listing each issue the petitioner wished to have reviewed;

3) The PCHA counsel's "explanation", in the "no-merit" letter, of why the petitioner's issues were meritless;

4) The PCHA court conducting its own independent review of the record; and

5) The PCHA court agreeing with counsel that the petition was meritless.

*Commonwealth v. Finley, 379 Pa. Super. 390, 550 A.2d 213, 215 (1988), footnote omitted.*

With regard to the claim of police misconduct, the defendant made no attempt to demonstrate that there was even a trace of evidence of any misconduct on the part of Officer Dove or any of the other police officers involved in his arrest and conviction, even going so far as to having acknowledged himself that he was unaware of any. From the discussions of the proven facts by this Court and the defendant's appellate and two previous *PCRA* attorney's, it does not appear that officer Dove even had any involvement in his arrest or conviction. His is just one more of many attempts by convicted felons to belatedly challenge the weight and sufficiency of the evidence that convicted them by disparaging all of the conduct of all police officers involved based solely upon the fact that one of them may have been involved in later and totally unrelated questionable conduct. Our Supreme Court has made absolutely clear, in the context of a claim of after-discovered evidence under *Pa.R.Crim.P. 720*, that any information contained in news media reports which a defendant does not corroborate with actual evidence or purported witness testimony proving the allegations in them is simply hearsay upon hearsay and does not, and never did, provide any basis for relief whatsoever, nor for obtaining discovery and being given a hearing in connection therewith, even if the news sources were identified and

12

documented. *Commonwealth v. Castro, 93 A.3d 818 (Pa. 2014).* The law has also long been clear, which the Court in *Castro* incidentally acknowledged, that a *PCRA* petitioner cannot be allowed to go on a fishing expedition into police files simply because one of the officers involved in his case may have committed improprieties in unrelated matters without meeting the *PCRA* requirements in demonstrating that there is a strong possibility that any improprieties were actually committed in his case. He cannot simply rely on innuendo.

> As discussed above, a showing of good cause requires more than just a generic demand for potentially exculpatory evidence that might be discovered if a defendant is permitted to review the requested materials. [*Commonwealth v.*] *Sattazahn,* [*597 Pa. 648, 952 A.2d 640*] *A.2d at 662.* We agree with the PCRA court that Appellant's request for discovery of the police files, which primarily was based on speculation that potentially exculpatory evidence *might exist* because exculpatory evidence has been found in police files in other cases, was insufficient to satisfy the good cause requirement. *See Commonwealth v. Koehler, 614 Pa. 159, 36 A.3d 121, 135 (2012)* (affirming the denial of collateral relief where the PCRA court rejected a *Brady* claim based on the factual finding that no undisclosed deal existed between the Commonwealth witness and the prosecutor, and such factual finding was supported by the record). Thus, the PCRA court did not abuse its discretion in denying Appellant's request to review the police archive files based on Appellant's speculation that the files contained *Brady* material.

*Commonwealth v. Reid, 99 A.3d 470, 500 (Pa. 2014).*

> Appellant argues that he is entitled to a remand for consideration of after-discovered evidence [pursuant to *42 Pa.C.S. § 9543(a)(2)(vi)*]. To warrant relief, after-discovered evidence must meet a four-prong test: (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely. See, *e.g., Commonwealth v. McCracken, 540 Pa. 541, 659 A.2d 541 (1995); Commonwealth v. Wilson, 538 Pa. 485, 649 A.2d 435 (1994).* Here, neither of Appellant's two items of after-discovered evidence meet this test.

*Commonwealth v. Dennis, 552 Pa. 331, 715 A.2d 404, 415 (1998).*

> Appellant's discovery requests are nothing more than a fishing expedition for possible exculpatory evidence. He has not demonstrated that the ballistics results were erroneous, that Officer Keenan was disciplined for paying witnesses, or that the Commonwealth possessed the purported impeachment evidence on Mr. Burton. . . . Appellant has not demonstrated good cause to require granting his

13

speculative discovery request pursuant to *Rule 902(E)(2)*.

*Commonwealth v. Carson, 590 Pa. 501, 913 A.2d 220, 261 (2006), rearg. denied Feb. 9, 2007,*

*cert. denied, Carson v. Pennsylvania, 552 U.S. 954, 128 S. Ct. 384, 169 L. Ed. 2d 270 (2007).*

## IV. CONCLUSION

Thus, it is clear that the defendant has completely failed to demonstrate a right to relief under the *PCRA*. Even if his appellate counsel did fail to file a *1925(b) Statement*, the issue was rendered moot since the Court nullified any adverse affect it may have otherwise had, and the defendant would have had no basis for relief even if his first petition had been timely filed. Neither he nor his present counsel made any effort to demonstrate why any of the issues they attempted to raise, with the exception of the alleged police misconduct, should not be considered to have been previously litigated or waived, nor what affect those issues would have had on the sufficiency of the actual evidence by which he was convicted. The additional issues he raised in his responses to the dismissal notice were patently frivolous, the one concerning *allocatur* proceedings being particularly so. Wherefore, the court's determination that the defendant's claims had presented no genuine issues of material fact was fully supported by the record and its dismissal of the petition without a hearing should be affirmed.

BY THE COURT:

_____
WILLIAM MAZZOLA, J.

14